**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LATOYA M.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 15058** |
| **v.** | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Before the Court is Plaintiff's Opening Brief (D.E. 21, "Pl. Mem."), which is now fully briefed. *See* Defendant's Memorandum in Support of Motion for Summary Judgment (D.E. 22, "Opp."), and Plaintiff's Reply (D.E. 23).

## I. Procedural History

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 5, 2023, alleging a disability onset date of July 1, 2022, and later amending her alleged onset date ("AOD") to July 1, 2024. (R. 17.) After a hearing, the Administrative Law Judge ("ALJ") issued a written decision denying Plaintiff's application on August 13, 2025,

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On December 22, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 7.)

finding her not disabled under the Social Security Act (the "Act").[3] (R. 17-32.) Plaintiff's date last insured ("DLI") is September 30, 2027.[4] (R. 19.) This appeal followed.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her AOD of July 1, 2024. (R. 19.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder, generalized anxiety disorder, diabetes mellitus, hypertension, posttraumatic stress disorder ("PTSD"), insomnia, tachycardia, vertigo, and degenerative disc disease of the lumbar spine. (R. 20.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (*Id.*) The ALJ assessed the "Paragraph B" criteria and found Plaintiff had a mild limitation in understanding, remembering, or applying information and moderate limitations in the remaining three "Paragraph B" functional areas: interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 20-22.) The ALJ assessed Plaintiff as having a residual functional capacity ("RFC") to perform light work with the following additional limitations:

> she can climb ramps and stairs frequently and can climb ladders, ropes or scaffolds occasionally. The claimant can stoop frequently, kneel frequently, crouch frequently and crawl frequently. The claimant can never work in high, exposed places and the claimant can have proximity to moving mechanical parts occasionally. The claimant can understand, remember and carry out simple instructions. The claimant can interact with supervisors occasionally, coworkers occasionally and the public occasionally.

---

[3] The Appeals Council denied further administrative review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Lincoln v. Bisignano*, 173 F.4th 886, 891 (7th Cir. 2026).

[4] To be entitled to DIB, a claimant must prove that their disability onset date preceded the DLI. *See Martin v. Kijakazi*, 88 F.4th 726, 728 (7th Cir. 2023), citing 42 U.S.C. § 423(c).

> The claimant can deal with changes in a routine work setting occasionally.

(R. 22.) At Step Four, the ALJ found that Plaintiff has no past relevant work. (R. 31.) At Step Five, the ALJ found Plaintiff capable of performing other jobs that exist in significant numbers in the national economy such as merchandise marker, mail room clerk, and routing clerk. (R. 31.) Thus, the ALJ determined that Plaintiff was not disabled under the Act. (R. 32.)

## III. Legal Standard

The Court "will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yokosh v. Bisignano*, 170 F.4th 631, 637 (7th Cir. 2026) (internal citations and quotations omitted). "In making these determinations, an ALJ is subject to only the most minimal of articulation requirements... Our role is extremely limited, and we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (internal quotations omitted). An "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Lincoln v. Bisignano*, 173 F.4th 886, 892 (7th Cir. 2026) (internal citations and quotations omitted). "It is enough that [the ALJ] build a logical bridge between the evidence and his conclusions." *Yokosh*, 170 F.4th at 639 (internal citations and quotations omitted). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement as ALJs: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## IV. Analysis: The RFC Crafted by the ALJ Was Not Supported by Substantial Evidence.

Plaintiff alleged disability due primarily to her depression and anxiety. (Pl. Mem. at 2.) On appeal, Plaintiff's sole argument is that the ALJ failed to account for her moderate limitations in concentration, persistence, and pace ("CPP") in the RFC and the hypothetical to the vocational expert ("VE"), resulting in an RFC that was not based upon substantial evidence. For the following reasons, the Court agrees.

Concentration, persistence, or pace refers to the "abilities to focus attention on work activities and stay on task at a sustained rate."[5] 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00E(3). A moderate limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* at § 12.00F(2)(c). The Seventh Circuit has addressed, on several occasions, the role CPP limitations must play in a proper RFC determination and has "emphasized that 'both the hypothetical posed to the [vocational expert] and the ALJ's [residual functional capacity] assessment must incorporate all of the claimant's limitations supported by the medical record,' including limitations in concentration, persistence, or pace." *Moy v. Bisignano*, 142 F.4th 546, 552-53 (7th Cir. 2025) (remanding where there was no logical bridge between the noted moderate CPP limitations and the RFC conclusion), citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); and *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump*, 932 F.3d at 570 (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).

---

[5] "Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00E(3).

In determining that Plaintiff has a moderate limitation in CPP, the ALJ, in his Paragraph B analysis, relied on Plaintiff's testimony that she was overwhelmed easily and had difficulty paying attention and concentrating; her mental status exams showed her attention and concentration were intact despite her mood abnormalities after her amended AOD; she completed the written function report in a detailed and responsive manner; and her treatment providers did not indicate she was inattentive or distracted during appointments after her amended AOD. (R. 21.) The ALJ also relied on the state agency psychologists at the initial and reconsideration levels concluding Plaintiff "could understand, remember and perform as well as maintain the attention, persistence and pace needed to carry out simple and routine work tasks … make decisions and deal with changes commensurate with work involving simple and routine work tasks." (R. 24.) The ALJ noted that Plaintiff's attention and concentration were normal in the behavioral health assessment completed by licensed clinical psychological counselor Lisa McNeil in August 2024 (R. 25, 26) and showed no abnormalities in a follow up with mental health nurse practitioner Derick Johnson in April 2025. (R. 27.)[6]

Plaintiff contends that the restriction in the ALJ's RFC finding that Plaintiff can "understand, remember and carry out simple instructions … can interact with supervisors occasionally, coworkers occasionally and the public occasionally" and "can deal with changes in a routine work setting occasionally" does not account for Plaintiff's moderate limitations in the Paragraph B functional category of CPP. (Pl. Mem. at 10; R. 22.) Specifically, Plaintiff claims the ALJ failed to discuss attention or concentration in any detail except for noting that Plaintiff

[6] Plaintiff acknowledges that the ALJ limited her to "remembering and carrying out simple instructions" and noted that this is a "similar unskilled work limitation" (Pl. Mem. at 11-12) but at no point did the ALJ explain why he limited Plaintiff to "simple *instructions*" (R. 22) when the state agency psychologists described "simple and routine *work tasks*." (R. 24.) (emphasis added.) Neither party addresses this difference with citation to case law. On remand, the ALJ shall be mindful of the state agency psychologists' description and explain any variation from it in the RFC analysis.

demonstrated normal attention or concentration in the record (*Id.*, citing R. 25-27, 29) but refrained from discussing other records indicating concentration difficulty. (*Id.*, citing R. 1617, 1622, 1626, 1631, 1636, 1641, 1646, 1652, 1656, 1662.)[7] Plaintiff also argues that the ALJ failed to explain how he accounted for the moderate concentration limitations. According to Plaintiff, the ALJ discussed that Plaintiff reported being easily overwhelmed but had normal attention and concentration and that she could complete the function report; the ALJ, however, failed to state the length of time it took Plaintiff to complete the function report and failed to explain how Plaintiff's completion of the report showed she could concentrate. (*Id.* at 10-11, citing R. 21, 385-92.)

Defendant argues that more recent Seventh Circuit decisions "routinely" approve language like that used by the ALJ in the RFC. (Opp. at 4.) Defendant suggests the reasoning is the revised regulations applicable in this case (claims pending as of January 17, 2017), that moderate limitation means a plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." (Opp. at 5, n. 7, quoting Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. at 66138, 66163 (Sept. 26, 2016).) In *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the Seventh Circuit referenced the amended regulation and determined that "fair" in ordinary usage does not mean "bad" or "inadequate," such that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.*

But in the RFC the ALJ assigned here, unlike in *Pavlicek*, there is no mention of "performing" or working at a particular pace at all, simply a statement that Plaintiff could

[7] While the Record at these pages does indicate "difficulty concentrating" it appears that these are *subjective* responses to questions posed to Plaintiff at her appointments at the Christian Community Health Center regarding Activities of Daily Living: "Do you have difficulty concentrating, remembering or making decisions?: Yes." (R. 1617, 1622, 1626, 1631, 1636, 1641, 1646, 1652, 1656, 1662.)

"understand, remember and carry out simple instructions," and "deal with changes in a routine work setting occasionally." (R. 22.) The ALJ thus imposed fewer CPP restrictions than even those crafted by the state agency consultants, who limited Plaintiff "to simple and routine *work tasks*." (R. 24, emphasis added.) The RFC assigned in this case says nothing about whether Plaintiff "could maintain the concentration required to *perform simple tasks*, remember simple work-like procedures, *and make simple work-related decisions*," as is required to adequately account for moderate limitations in CPP. *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (emphasis added). The Court notes that the Seventh Circuit cases Defendant relies upon in support of his argument all involve an RFC with limitations to simple or routine "tasks" or "work" but not to "instructions" as is the case before this Court. (Opp. at 4-5.)

Moreover, even if the ALJ had "observ[ed] that [Plaintiff] can *perform* simple and repetitive tasks," that still "says nothing about whether the individual can do so on a sustained basis." *Crump*, 932 F.3d at 570 (emphasis added). To account for CPP limitations, the ALJ must not only address what kind of work a plaintiff can do, but also whether, and to what extent, the plaintiff can sustain that work. And in the cases upon which Defendant relies, the ALJs did just that, imposing limitations beyond the "simple and routine tasks" language to account for moderate limitations in CPP that affected whether the claimant could perform work consistently or on a sustained basis. In *Pufahl v. Bisignano*, 142 F.4th 446, 460 (7th Cir. 2025), for example, the Seventh Circuit recognized that "terms like simple, repetitive tasks on their own will not necessarily exclude … positions that present significant problems of concentration, persistence and pace" and affirmed where "the ALJ [] included a further limitation beyond simple and routine tasks by limiting [plaintiff] to only being able to maintain attention and concentration for two-hour segments." Similarly, in *Cain v. Bisignano*, 148 F.4th 490, 498-99 (7th Cir. 2025), the plaintiff

was limited to "maintaining concentration on simple, routine, and repetitive tasks for two-hour periods."

At the end of the day, limiting Plaintiff to simple instructions in the RFC is not enough to account for her moderate limitations in CPP and for that reason, the RFC was not supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's request to remand the ALJ's decision (D.E. 21) and denies Defendant's motion for summary judgment (D.E. 22).

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: October 1, 2026**